991 P.2d 832

STATE of Hawai'i, Plaintiff–Appellee,

v.

Allen Edward KAUFMAN,
Defendant–Petitioner.

No. 22044.

Supreme Court of Hawai'i.

Jan. 20, 2000.

As Amended Jan. 31, 2000.

Michael G.M. Ostendorp, on the briefs, for defendant-petitioner, on the writ.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the court by MOON, C.J.

Defendant-appellant Allen Edward Kaufman timely petitioned this court for a writ of certiorari to review the summary disposition order of the Intermediate Court of Appeals (ICA) in *State v. Kaufman*, 92 Hawai'i 691, 994 P.2d 623 (1999). Therein, the ICA affirmed the first circuit court's September 10, 1998 order granting the prosecution's motion to set aside Kaufman's deferred acceptance of guilty (DAG) plea and accept Kaufman's guilty plea for judgment of conviction and sentence. In his petition, Kaufman argued for the reversal of the September 10, 1998 order because: (1) the circuit court lacked jurisdiction to set aside Kaufman's DAG plea after the deferral period had expired; and (2) the evidence demonstrated that Kaufman's violations of the terms and conditions of the modified DAG plea order occurred after the expiration of the deferral period.

Although the ICA reached the correct result, we granted certiorari in this case to clarify that a motion to set aside a DAG plea tolls the period of deferral pending the decision of the court on the motion. Accordingly, we affirm Kaufman's judgment of conviction and sentence.

## I. BACKGROUND

On January 19, 1983, Kaufman was indicted on twenty-six counts of theft in the first degree (Counts I through XXVI), in violation of Hawai'i Revised Statutes (HRS) § 708–831(1)(b) (1976).[1] On November 8, 1984, Kaufman pled guilty to all twenty-six counts and moved for a DAG plea.[2]

1. HRS § 708–831 (1976) provided in pertinent part:

Theft in the first degree. (1) A person commits the offense of theft in the first degree if [the person] commits theft:

....

(b) Of property or services the value of which exceeds $200; or

....

(2) Theft in the first degree is a class C felony except in the event of extortion, in which case theft in the first degree is a class B felony.

2. HRS § 853–1 (1976 & Supp.1984) provided:

**Deferred acceptance of guilty plea or nolo contendere plea; discharge and dismissal, expungement of records.** (a) Upon proper motion as provided by this chapter:

(1) When a defendant voluntarily pleads guilty or nolo contendere, prior to commencement of trial, to a felony, misdemeanor, or petty misdemeanor;

(2) It appears to the court that the defendant is not likely again to engage in a criminal course of conduct; and

(3) The ends of justice and the welfare of society do not require that the defendant shall presently suffer the penalty imposed by law,

the court, without accepting the plea of nolo contendere or entering a judgment of guilt and with the consent of the defendant and after considering the recommendations, if any, of the prosecutor, may defer further proceedings.

(b) The proceedings may be deferred upon any of the conditions specified by section 706–624. The court may defer the proceedings for such period of time as the court shall direct but in no case to exceed the maximum sentence allowable. The defendant may be subject to bail or recognizance at the court's discretion during the period during which the proceedings are deferred.

On December 18, 1984, the circuit court entered an order granting Kaufman's motion for DAG plea (the DAG plea order), which included, *inter alia,* the following special conditions:

    a. [Kaufman] shall be free from further convictions *for a period of five years.*

    b. [Kaufman] shall reimburse all monies received from bona fide or verified investors to be identified by the Office of the Prosecuting Attorney. The amount and manner of reimbursements to be made by ... [Kaufman] are subject to further judgment of the Court upon determination being made by the Office of the Prosecuting Attorney and [defense counsel's] [o]ffice. *Payments of reimbursements are to be made in three equal yearly installments—first payment being made due one year from today (12/18/84).*

(Emphases added.)

On February 28, 1986, the prosecution filed a motion to set aside the DAG plea order and accept Kaufman's guilty plea for judgment of conviction and sentence ("motion to set aside the DAG plea order") based on Kaufman's failure to make restitution payments as required by special condition (b) of the DAG plea order. On August 4, 1986, Kaufman filed a memorandum opposing the prosecution's motion to set aside the DAG plea order and a motion for an order to modify the terms and considerations of the DAG plea order.

On November 24, 1989, more than three years later, the circuit court filed an order, denying the prosecution's motion to set aside the DAG plea order and granting Kaufman's motion to modify the DAG plea order (the

modified DAG plea). The record does not reflect the reason for the delay in entering the order. The circuit court's modified DAG plea order provided in pertinent part:

    1. The period of [Kaufman's DAG plea] is extended five years in addition to the five years in the original order granting [DAG plea], for a total of ten years.

    2. The original term requiring [Kaufman] to make restitution in three equal annual payments beginning December 18, 1984[sic], shall be deleted.

    3. [Kaufman] shall make monthly restitution payments in an amount and manner to be determined by the Adult Probation Division based on [Kaufman's] ability to pay.[3]

    4. [Kaufman] shall continue to submit to the Adult Probation Division monthly accounting statements.

    5. All other terms and conditions of [Kaufman's] original deferred acceptance of guilty plea shall remain in effect.

On April 19, 1994, the prosecution filed a motion to set aside the modified DAG plea and accept Kaufman's guilty plea for judgment of conviction and sentence (motion to set aside the modified DAG plea), based on Kaufman's continued failure to make the required restitution payments and failure to submit monthly accounting statements to the Adult Probation Division.

During the two years that followed the filing of the motion to set aside the modified DAG plea, the hearing was postponed six times, always "by agreement" and at least once at the request of Defense counsel. On January 8, 1996, the prosecution's motion to set aside the modified DAG plea was finally

---

    (c) Upon [the defendant's] completion of the period designated by the court and in compliance with the terms and conditions established, the court shall discharge the defendant and dismiss the charge against [the defendant].

    (d) Discharge of the defendant and dismissal of the charge against [the defendant] under this section shall be without adjudication of guilt, shall eliminate any civil admission of guilt, and is not a conviction.

    (e) Upon discharge of the defendant and dismissal of the charge against [the defendant] under this section, the defendant may apply for expungement not less than one year following discharge, pursuant to section 831–3.2.

**3.** This court, in *State v. Gaylord,* 78 Hawai'i 127, 153, 890 P.2d 1167, 1193 (1995), held, *inter alia,* that restitution is illegal where the sentencing court delegates judicial function of determining the amount and manner of payment to an administrative body. *Gaylord,* however, was decided in 1995, nearly four and a half years after the circuit court's issuance of the modified DAG plea order. Regardless, subsequent to the modified DAG plea order, Kaufman never challenged and, in fact, stipulated to the "amount and manner of payment."

heard. At the hearing, Kaufman unsuccessfully requested a continuance. Following the presentation of the prosecution's case, Kaufman stipulated to (1) a violation of the terms and conditions of the modified DAG plea order and (2) "revocation of the deferral." Based on Kaufman's stipulation, the circuit court granted the prosecution's motion to set aside the modified DAG plea, accepted Kaufman's guilty plea, and set a sentencing hearing for July 10, 1996.

Kaufman's sentencing hearing was postponed seven times, spanning two more years, and finally was held on September 10, 1998. Each of the seven postponements of the hearing were either by agreement of the parties or attributable to Kaufman. Meanwhile, in 1997, Kaufman was convicted of (1) grand theft by embezzlement in California and (2) felony larceny in Arizona.

On September 8, 1998, two days prior to the hearing, Kaufman's attorney filed a motion to continue the September 10, 1998 sentencing hearing or, in the alternative, a motion to withdraw as counsel and have substitute counsel appointed. Then, at the September 10, 1998 hearing, Kaufman filed a motion to withdraw his stipulations from the January 8, 1996 hearing on the motion to set aside the modified DAG plea and an ex parte motion to shorten time for the hearing on the motion to withdraw stipulations. Subsequent to granting the ex parte motion to shorten time, the court addressed Kaufman's: (1) motion to continue the sentencing hearing; (2) motion to withdraw stipulations; and (3) sentencing.

At the September 10, 1998 hearing, the circuit court denied defense counsel's motion to continue. However, the court granted, without objection by the prosecution, Kaufman's motion to withdraw stipulations. With Kaufman's stipulation withdrawn, the circuit court again proceeded with a hearing on the prosecution's motion to set aside the modified DAG plea order.

The prosecution called its first witness, Kaufman's probation officer. Following a recess, defense counsel indicated on the record that Kaufman had signed yet another stipulation. In this new stipulation, Kaufman acknowledged violations of the terms and conditions in the modified DAG plea order based on his 1997 California and Arizona convictions. The stipulation provided in pertinent part as follows:

8. [Kaufman] was charge[d] in the State of California with the criminal offense of Grand Theft by Embezzlement, under case number GA030089–01 April 8, 1997[.]

9. [Kaufman], being represented by counsel, voluntarily and knowingly changed his plea to guilty and on April 8, 1997, was sentenced to two years incarceration.

10. [Kaufman] was charged in the State of Arizona with the criminal offense of Felony Larceny, under case 97–92661.

11. [Kaufman], being represented by counsel, voluntarily and knowingly changed his plea to guilty and on November 24, 1997, was sentenced to one and one half years [ ] imprisonment.

. . . .

14. [Kaufman] stipulates that he knowingly and fully aware [sic] that his convictions in the State of California, under case number GA 030089 and the State of Arizona, under case number 97–92661 are the basis for the State's [motion to set aside the modified DAG plea].

15. . . . [Kaufman] knowingly violated the terms and conditions of his [modified DAG plea order] as a result of this [sic] subsequent convictions in the State of California under case number GA 030089 and the State of Arizona under case number 97–92661.

16. [Kaufman] stipulates to consecutive sentencing for Counts 1 to 3 and [that] he be sentenced to a term of imprisonment for a period of [15] years.

[17]. [Kaufman] stipulates that as to Counts 4 to 26, he be sentenced to a term of imprisonment for a period of [5] years to run concurrent with the sentence in Counts 1–3.

[18]. [Kaufman] stipulates to a free standing order for restitution in the amount of [$686,510.37], with the amount to be reduced by payments already made by [Kaufman].

At the conclusion of the September 10, 1998 hearing, the circuit court convicted Kaufman of twenty-six counts of theft in the first degree and sentenced him to consecutive terms of five years' imprisonment as to counts I through III and concurrent terms of five years' imprisonment as to counts IV through XXVI, for a total of fifteen years' imprisonment. On October 8, 1998, the circuit court granted an exparte motion for extension of time to file the notice of appeal.

On November 9, 1998, Kaufman timely appealed, arguing that: (1) the circuit court lacked jurisdiction to set aside Kaufman's modified DAG plea because the ten-year deferral period had expired; and (2) the evidence demonstrated that Kaufman's violations of the terms and conditions of the modified DAG plea order occurred after the expiration of the deferral period. The ICA summarily affirmed the trial court's judgment on August 4, 1999. Kaufman filed an application for writ of certiorari on August 16, 1999, which we granted on August 26, 1999.

## II. *STANDARD OF REVIEW*

"[T]he interpretation of a statute [or ordinance] is a question of law reviewable *de novo.*" *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (quoting *State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930, *reconsideration denied,* 79 Hawai'i 341, 902 P.2d 976 (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704, *reconsideration denied,* 76 Hawai'i 453, 879 P.2d 558 (1994), *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

*Gray v. Administrative Dir. of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists . . . .

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1-15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (quoting *State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis point in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1-15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1-16 (1993).

*State v. Cullen,* 86 Hawai'i 1, 8–9, 946 P.2d 955, 962–63 (1997) (brackets and ellipses in original).

▆▆▆ The grant or denial of a DAG plea is within the discretion of the trial court and will not be disturbed unless there has been a manifest abuse of discretion. *State v. Karwacki,* 1 Haw.App. 157, 159–60, 616 P.2d 226, 228 (1980). Likewise, setting aside, or revoking, a DAG plea is properly within the discretion of the trial court. "Generally, to constitute an abuse, it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of the

party litigant." *Id.* at 160, 616 P.2d at 228; *see also State v. Kauhi*, 86 Hawai'i 195, 197, 948 P.2d 1036, 1038 (1997) (citing *State v. Ganal*, 81 Hawai'i 358, 373, 917 P.2d 370, 385 (1996)).

## III. *DISCUSSION*

### A. *The circuit court had authority to set aside the DAG plea.*

Kaufman first contends that the circuit court lacked jurisdiction to set aside the modified DAG plea on September 10, 1998 because the ten-year deferral period imposed by the order had expired on December 18, 1994. The prosecution argues that the period of deferral was tolled from the time the prosecution filed its motion to set aside the modified DAG plea (April 19, 1994) until the court reached its decision on the motion (September 10, 1998). For the reasons indicated below, we agree with the prosecution.

Kaufman bases his contention that the circuit court lacked jurisdiction on two grounds: (1) under the DAG plea statute, the circuit court could not extend his deferral period beyond the maximum sentence of ten years; (2) no tolling provisions apply to deferral periods pursuant to a DAG plea, and, therefore, Kaufman's deferral period expired December 18, 1994, prior to the circuit court's revocation of his DAG plea. We address each argument in turn.

#### 1. **The maximum allowable deferral period was not ten years.**

Kaufman's first ground is completely without merit. The statute governing Kaufman's DAG plea [hereinafter, the DAG plea statute] states in pertinent part:

(b) The proceedings may be deferred upon any of the conditions specified by section 706–624 [entitled "Conditions of suspension of sentence or probation"]. The court may defer the proceedings for such period of time as the court shall direct but in no case to exceed the *maximum sentence allowable.* The defendant may be subject to bail or recognizance at the court's discretion during the period during which the proceedings are deferred.

HRS § 853–1 (1976 & Supp.1984) (emphasis added). Kaufman entered and pled guilty to twenty-six counts of first degree theft in violation of HRS § 708–831(1)(b), a class C felony in 1983. HRS § 708–831 (1976 & Supp.1984). Both the prosecution and Kaufman incorrectly stated throughout their briefs that Kaufman pled guilty to a class B felony. However, when Kaufman committed each of the crimes to which he pled guilty, theft in the first degree was a class C felony, which punished, *inter alia,* theft of property exceeding the value of $200. *See* HRS § 708–831(1)(b) (1976 & Supp.1984). As a class C felony, each count of theft carried a maximum indeterminate sentence of five years' imprisonment. *See* HRS § 706–660 (1976 & Supp.1984). The trial court, in its discretion, could have imposed five years' imprisonment for each count, each term of imprisonment to run consecutively. *See* HRS § 706–668 (Supp.1984) Thus, the "maximum sentence allowable" for the crimes committed was, potentially, 130 years. The trial court, however, deferred acceptance of Kaufman's plea for a total of five years, beginning from December 18, 1984. That deferment period was then extended five more years for a total of ten years, beginning from December 18, 1984. Thus, at no time did the trial court in Kaufman's case exceed the maximum deferral period allowable under the DAG plea statute. Therefore, Kaufman's contention that, because he "entered guilty pleas to Theft in the First Degree, the maximum period in [sic] which his plea could be deferred was ten years," is without merit.

#### 2. **Tolling applies.**

Kaufman next argues that the circuit court lacked jurisdiction to set aside the modified DAG plea because no tolling provision was applicable to his period of deferral and that, therefore, it expired on December 18, 1994. The prosecution argues that the motion to set aside the modified DAG plea, filed April 19, 1994, eight months prior to the December 18, 1994 expiration, tolled the deferral period pending the circuit court's ruling on the motion. We acknowledge that a court cannot set aside a DAG plea after the period of deferral has expired. HRS § 853–1(c) (1976 & Supp.1984) (stating that "[u]pon

[defendant's] completion of the period designated by the court ..., the court *shall* discharge the defendant and dismiss the charge against him[ ]"). Therefore, the issue before this court is whether the prosecution's motion to set aside the modified DAG plea tolled Kaufman's deferral period.

The legislature has not enacted a tolling provision specifically applicable to DAG plea deferral periods. However, the prosecution asserts that the legislative intent behind HRS § 853–1 can only be given effect by inferring a tolling period. The prosecution further contends that the tolling provisions of HRS § 706–627, pertaining to probation, should apply analogously. Kaufman, on the other hand, contends that a DAG plea "is not probation," and, therefore, the tolling provision applicable to probation, HRS § 706–627, should not apply.[4]

### a. A DAG plea deferral period is closely analogous to probation.

■ Upon review of the legislative and judicial history of DAG plea procedures, it is clear that the DAG plea deferral period is closely analogous to a "probationary period." One Senate Standing Committee Report states that

> [t]his sentencing alternative [ (referring to deferred pleas) ] is employed in those cases where the interests of both the public and the defendant are best subserved by discharging the defendant without a judgment of conviction, after the defendant has successfully completed a *probationary period.* ...

Sen. Stand. Comm. Rep. No. 616–76, in 1976 Senate Journal, at 1152 (emphasis added). Additionally, the language of the DAG plea statute plainly defers to the probation section of the penal code for the conditions (of probation) applicable to a DAG plea: "The proceedings may be deferred upon any of the conditions specified in section 706–624," entitled "Conditions of Probation." HRS § 853–1 (1976 & Supp.1984). Thus, the DAG plea statute, by its plain language and in light of its legislative history, provides that the deferral period following the grant of a DAG plea is a "probationary period," subject to such conditions of probation as determined by the court. Consequently, the deferral period following a DAG plea is closely analogous to a probationary period. *See, e.g., People v. Peretsky,* 44 Colo.App. 270, 616 P.2d 170, 172 (1980) (recognizing that revocation of probation is closely analogous to revocation of a deferred sentence); *see also* Ga. Code Ann. § 42–8–60 (1997) (using the term "probation" rather than deferral in a statute analogous to the DAG plea statute, which provides that the court *may* "[d]efer further proceeding and place the defendant on probation[,]"* prior to adjudication of guilt); Ariz.Rev.Stat. Ann. § 13–3422 (1989 & Supp. 1998) (using the term "probation" in its drug court statute, which, like the DAG plea statute, permits "the court, without entering a judgment of guilt ... *[to] defer further proceedings and place the defendant on probation* [ ]").

### b. The probation tolling provisions apply.

■■ We now examine whether the probation tolling statute, HRS § 706–627, applies analogously to the deferral period of a DAG plea. HRS § 706–627 (Supp.1984) states in pertinent part:

> (2) *Upon the filing of a motion to revoke a probation ... or a motion to increase the requirements imposed thereby, the period of probation ... shall be tolled pending the hearing upon the motion and the decision of the court.* The period of tolling shall be computed from the filing date of the motion through and including the filing date of the written decision of the court concerning the motion for purposes of computation of the remaining period of probation, ..., if any. In the event the court fails to file a written decision upon the motion, the period shall be computed by reference to the date the court makes a

---

4. We note, however, that Kaufman, in his petition, cited to probation cases analogously for the proposition that the court lacked jurisdiction to revoke DAG pleas after the period of deferral had expired. Furthermore, both the prosecution and Kaufman asserted exactly reverse positions on the issue of whether probation is analogous to a DAG plea deferral period in their respective memoranda regarding the prosecution's first motion to set aside Kaufman's DAG plea.

decision upon the motion in open court. *During the period of tolling of the probation ..., the defendant shall remain subject to all terms and conditions of the probation ... except as otherwise provided by this chapter.*

(3) In the event the court, following hearing, refuses to revoke the probation ... or grant the requested increases in requirements thereof because the defendant's failure to comply therewith was excusable, the defendant may be granted the period of tolling of the probation ... for purposes of computation of the remaining probation ..., if any.

(Emphases added.)

The probation tolling provisions were enacted in 1977

to amend present law by providing for tolling of the period of probation ... whenever a motion to revoke a probation ... sentence is filed or a motion to increase the requirements imposed is filed. The period of probation ... is to be tolled pending the hearing upon the motion and decision of the court. *Your Committee was informed that under present law it is possible for a person's period of probation ... to run out pending a revocation hearing, thus making him a free man, even though he may have committed acts justifying revocation of probation....* Your Committee believes that this bill will prevent such situations from occurring.

*In Matter of Kaohu,* 1 Haw.App. 469, 476, 620 P.2d 1082, 1086 (1980) (quoting Hse. Stand. Comm. Rep. No. 450, in 1977 House Journal, at 1495; Sen. Stand. Comm. Rep. No. 1105, in 1977 Senate Journal, at 1295); *see also* Commentary to HRS § 706–627 (1976). The *Kaohu* court further stated:

Without tolling, a probationer would effectively escape the possible sanction of revocation for having committed a new crime while on probation whenever the trial on the new charge occurred after the normal running of the probation period, while obtaining the benefit of preservation of all procedural rights.

*Id.* at 475, 620 P.2d at 1086. Although HRS § 706–627 does not specifically address deferral periods under a DAG plea, the public policy concerns and legislative intent underlying the tolling of probation are equally applicable to the tolling of a deferral period pursuant to DAG plea. Without tolling, a person subject to a deferral period pursuant to a DAG plea would effectively escape the sanction of revocation simply because his untolled deferral period had expired before the trial court ruled on the revocation. Thus, the legislative history of HRS § 706–627 supports the tolling of the deferral period upon a motion to set aside a DAG plea, particularly in light of the fact that, by its express terms, the provisions of HRS § 706–624 are exported and incorporated by reference into HRS § 853–1. To hold otherwise, would undermine the public policy concerns addressed by the legislature.

Additionally, the DAG plea statute specifically states that, "upon [defendant's] completion of the period designated by the court *and in compliance with the terms and conditions established,* the court shall discharge the defendant and dismiss the charges against him." HRS § 853–1 (1976 & Supp. 1984) (emphasis added). A pending motion to set aside a DAG plea is a clear indication that the defendant may not be the midst of a successful deferral period. To conclude that tolling does not apply when a motion to set aside a DAG plea is filed would defeat the plain meaning of the statute. Without tolling of the deferral period, a defendant would be discharged, despite non-compliance with the terms and conditions of his DAG plea, prior to the court's disposition of the motion to set aside.

■ Furthermore, the granting of a DAG plea is an act of legislative grace, within the discretion of the trial court; it is not a matter of right for the defendant. *See State v. Karwacki,* 1 Haw.App. 157, 159–60, 616 P.2d 226, 228 (1980). Thus, we cannot construe the law in such a way that would preclude the trial court's setting aside of Kaufman's DAG plea merely because the hearing was postponed beyond the deferral period, especially when Kaufman contributed and agreed to the delay of the circuit court's decision on his motion to set aside DAG plea. Such a result would be untenable.

**330**

Based on the foregoing, we hold that the tolling provisions under HRS § 706–627 apply to deferral periods pursuant to a DAG plea. Accordingly, because the prosecution's motion to set aside the modified DAG plea order was filed *prior to* the expiration of the ten-year DAG plea period, Kaufman's deferral period was tolled from April 19, 1994, the date on which the prosecution filed its motion to set aside the modified DAG plea, until September 10, 1998, the date on which the circuit court ruled on the motion. Thus, the circuit court had jurisdiction to grant the prosecution's motion to set aside the modified DAG plea order.

**B.** *Kaufman's convictions occurred during the deferral period.*

Kaufman next contends that he did not violate any term or condition of his DAG plea because the violations occurred well after the expiration of the deferral period. However, because we hold that tolling under HRS § 706–627 applies, Kaufman's deferral period was tolled from April 19, 1994 to September 10, 1998.

 During the period of tolling, Kaufman remained subject to all terms and conditions of the DAG plea. *See* HRS § 706–627. Although Kaufman argues in a footnote that the modified DAG plea did not require him to remain conviction-free for the extended five-year period of the deferral, his argument lacks merit. The modified DAG plea first extended the original five-year deferral period by five *additional* years, then modified the payment terms, and finally stated explicitly that "all other terms and conditions of Kaufman's original deferred acceptance of guilty plea shall remain in effect." Thus, the original condition, *which required Kaufman to be conviction-free*, was in effect throughout the ten-year deferral period.

As previously stated, while his deferral period was in effect, Kaufman was convicted of (1) grand theft in California and (2) felony larceny in Arizona in 1997. These convictions clearly violated the terms of Kaufman's DAG plea. Accordingly, the circuit court did not abuse its discretion in setting aside Kaufman's DAG plea, accepting his guilty plea, and convicting and sentencing him accordingly.

## IV. *CONCLUSION*

Based on the foregoing, we affirm Kaufman's judgment of conviction and sentence.