3 P.3d 1239

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Reyna PUTNAM, Defendant–Appellant.**

No. 23017.

Supreme Court of Hawai'i.

July 14, 2000.

Joy A. Hutson, on the briefs, Hilo, for defendant-appellant.

Tharrington T. Trusdell, Deputy Prosecuting Attorney, County of Hawai'i, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by ACOBA, J.

We hold that Hawai'i Revised Statutes (HRS) § 706–625(5) (Supp.1999), which permits a trial court on revocation of probation to impose any sentence that might have originally been imposed at the time of conviction, does not apply to the sentencing procedure attendant to revocation of a deferred acceptance of guilty plea (DAGP), the same being already specifically governed by HRS § 853–3 (1993). Thus, we disagree with the argument of Defendant–Appellant Reyna Putnam (Defendant) to the contrary and affirm the ruling of the circuit court of the third circuit (the court) that Defendant, who was age-eligible for sentencing under the young adult defendant statute, HRS § 706–667 (Supp. 1999), at the time her DAGP was granted, but age-ineligible at the time it was revoked, could not thereafter be sentenced as a young adult defendant. We reach the same result in this case on the independent ground that specialized treatment under HRS § 706–667 is afforded only to those who are less than the prescribed twenty-two years of age at the time of sentencing. Accordingly, Defendant was subject to ordinary sentencing provisions under HRS chapter 706.

In answer to Defendant's alternative point, we discern no abuse of discretion in the court's imposition of a maximum indeterminate prison term of ten years as statutorily authorized on her conviction of a class B felony.

## I.

In an April 16, 1998 indictment, Defendant was charged in Count I with committing the offense of Commercial Promotion of Marijuana in the First Degree, HRS §§ 712–1249.4(1)(d) (1993) and/or 701–211(2)(c) (1993) and 702–222(1) (1993), and in Count II with committing the offense of Prohibited Acts Related to Drug Paraphernalia, HRS §§ 329–43.5(a) (1993) and/or 702–221(2)(c) and 702–222(1). Under Count I, Defendant was alleged to have "knowingly cultivated on land owned by another person, including land owned by the government or other legal entity, twenty-five or more marijuana plants without having express permission from the owner of the land to cultivate the marijuana

and without having a legal or an equitable ownership interest in the land and without having the legal right to occupy the land[.]" Under Count II, Defendant was alleged to have "used, or possessed with intent to use, drug paraphernalia ... to introduce into [her] body a controlled substance[.]"

On July 14, 1998, Defendant pled guilty to the reduced charge of Commercial Promotion of Marijuana in the Second Degree, pursuant to a plea bargain. Under the plea bargain terms, Plaintiff–Appellee State of Hawai'i (the prosecution) agreed "[t]o dismiss Count II and to reduce Count I from Commercial Promotion [First Degree] to [Second Degree] ... [and] not [to] seek a sentence of more than Probation with a condition of jail for 30 days straight and the remainder of any jail, [sic] suspended and standard terms and conditions." Defendant also agreed to "serve the 30 days with no MAP."[1] There is no reference in the plea bargain to the young adult defendant statute, HRS § 706–667.

At the sentencing hearing on October 22, 1998, the court "set aside the earlier acceptance of guilty plea[,]" allowed Defendant to enter a DAGP, "place[d] [Defendant] under the supervision of the Adult Probation Division for five years," and ordered that "general terms and conditions ... apply to [Defendant] ... [as] required by law."

On October 22, 1998, an order granting the DAGP motion was entered. Under the order, Defendant was subjected to the following pertinent "terms and conditions":

2. You must report as directed by your probation officer.

. . . .

7. If your whereabouts become unknown to your probation officer because of your failure to keep him [or her] informed, the court may order your arrest. Any failure by you to comply with any of the terms and conditions will mean that the court can accept your guilty plea and sentence you in this case.

Defendant was also required to comply with the following relevant "special conditions":

(2) You shall pay a Criminal Injuries Compensation Fee in the amount of $200 to be paid in full one year from your sentencing date.

(3) You shall not possess, use, or consume any alcohol, unprescribed or illegal drugs nor possess any drug-related paraphernalia.

(4) You shall submit to random drug testing within two hours of the request by the Adult Probation Division. Failure to provide a sample shall be considered a positive test and a violation of your supervision.

On November 9, 1998, the prosecution filed a motion for nolle prosequi with prejudice of Count II, pursuant to the plea bargain, which was approved by the court.

On July 2, 1999, the prosecution filed a motion to set aside the DAGP on the grounds that Defendant had violated imposed terms and conditions in (1) failing to report to her probation officer on March 25, April 16, May 28, June 7, and June 17, 1999; (2) failing to respond to letters instructing her to report on the above dates; (3) neglecting "to pay her Criminal Injuries Compensation Fee"; (4) testing positive for "cannabinoid 50"[2] on May 13, 1999; and (5) failing to obtain a substance abuse assessment as directed by the probation division.

On October 18, 1999, the prosecution filed a notice of additional grounds to its motion, contending that Defendant also (1) failed to report to her probation officer on September 24 and October 12, 1999 and (2) tested positive for marijuana use on September 23, 1999.

On October 21, 1999, the court granted the prosecution's motion and accepted Defendant's guilty plea. At this hearing, the prosecution recommended that the court sentence Defendant to "probation[,] up to one year jail[,] with reasonable terms and conditions of probation." However, the court declined to do so on the basis that it did not find probation was warranted:

---

1. The record does not indicate what "MAP" means.

2. "Cannabinoid 50" is not defined in the record.

I frankly do not find her to be probationable. She—its one thing if she conducted herself in a way that would lead me to conclude she can follow instructions; recognize the seriousness of the offense; she had some reason, substantial grounds to justify her conduct, particularly the marijuana use—and this is a marijuana crime—and it's not just use or promotion.

Additionally, the court declined to acquiesce in Defendant's request for a prison term of five years under the young adult defendant statute. Instead, the court sentenced Defendant, under ordinary sentencing provisions, to ten years' imprisonment:

> [DEFENSE COUNSEL]: Your Honor, ... I would like this court to ... consider [HRS §] 706–667, which is applicable [to] young adult defendants. One of the reasons why we entered into this plea agreement early in this case or earlier was because we want to make sure that at least statutorily [HRS §] 706–667 is applicable and that is the young adult defendant statute for Class B felonies.
>
> She was convicted at a time when—when she was less than 22 years of age[; she] has not been previously convicted of a felony as an adult. [HRS §] 706–667 is thus applicable, which sets maximum terms for Class B felonies to five years for a young adult defendant in this particular case.
>
> . . . .
>
> THE COURT:—the law says that the young adult statute, [HRS § 706–]667, is afforded to persons who at the time of sentencing are less than 22 years of age. There's a presumption I guess or assumption that people at that age level might be afforded different kinds of correctional treatment.
>
> *Now, [Defendant] as she stands here today is not less than 22 years of age. I understand that at the time of the sentencing she was, but I think the interpretation*

*of the law needs to be ... read pretty specifically and she's not—she doesn't fall by age into this category anymore.*

> [DEFENSE COUNSEL]: *Your Honor, ... our interpretation of it is that it's at the time of the original sentencing. It is, of course, within this [c]ourt's discretion as to whether or not ... to apply [HRS §] 706–667. ...*
>
> . . . .
>
> THE COURT: When it says may, it just means that you can—that a person is not necessarily entitled by right to get this. *In other words, someone who is 19, 20 years old doesn't necessarily automatically get this treatment so I interpret it that way. So I will make a finding that at the age of 22, this statute will no longer apply.* [Defendant] will not qualify for the young adult treatment[.]
>
> . . . .
>
> The [c]ourt ... [will] sentence [Defendant] to ten years in prison for the B felony offense of Commercial Promotion of Marijuana in the Second Degree. [Defendant will be] given credit for time served.

(Emphases added.)

On November 1, 1999, Defendant filed a motion for reconsideration, contending that the court's imposition of a ten-year prison term was "especially harsh." In her supporting memorandum, Defendant argued that under HRS § 706–625(5), upon revocation of probation, the court "may impose on the defendant any sentence that might have been imposed originally" and, thus, because she was twenty-one years old at the time of her original "sentence," she qualified for sentencing as a young adult defendant.

On November 30, 1999, Defendant filed a withdrawal of her motion, stating therein that the withdrawal was based upon "an on-the-record stipulation [3] that Defendant may refile her Motion to Reconsider within 90 days after the return on Appeal." [4]

---

3. Defendant's motion to withdraw states that her motion for reconsideration came before the court for a hearing on November 23, 1999.

4. Hawai'i Rules of Penal Procedure (HRPP) Rule 35 (1980) allows a court to reduce a sentence within ninety days of a judgment on appeal af-

firming the judgment. HRPP Rule 35 states in relevant part:

RULE 35.  CORRECTION OR REDUCTION OF SENTENCE
    The court may correct an illegal sentence at any time and may correct a sentence imposed

On December 10, 1999, Defendant appealed "from the Order of Resentencing [pursuant to a] Revocation of Deferred Acceptance of No Contest [5] Plea filed herein October 21, 1999." She contends that "the court erred by finding the [y]oung [a]dult [d]efendant's [s]tatute [i]napplicable and by [r]efusing to [e]xercise its [d]iscretion on whether it is appropriate to Defendant at her [r]esentencing." In the alternative, Defendant argues that "[t]he [c]ourt [a]bused its [d]iscretion by [s]entencing Defendant to [t]en years in [p]rison for [t]echnical [v]iolations."

## II.

■ On appeal, Defendant first asserts that HRS § 706–667 was applicable to her at "resentencing" on October 21, 1999, because HRS § 706–625 permits a trial court, upon revocation of probation, to sentence the defendant to "any sentence that might have been imposed originally." Defendant, however, was never placed on probation. Her statement, accordingly, is erroneous.

## A.

HRS § 706–625 provides in pertinent part as follows:

> in an illegal manner within the time provided herein for the reduction of sentence. *The court may reduce a sentence* within 90 days after the sentence is imposed, or *within 90 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal,* or within 90 days after entry of any order or judgment of the Supreme Court of the United States denying review of, or having the effect of upholding a judgment of conviction. (Emphases added.) *See State v. Williams,* 70 Haw. 566, 569, 777 P.2d 1192, 1194 (1989) (recognizing that "[a] trial court has the discretion to, within the time limits set forth by HRPP Rule 35, reduce a sentence") (citation omitted); *State v. Rodrigues,* 68 Haw. 124, 134 n. 7, 706 P.2d 1293, 1300 n. 7 (1985) (noting that, following the supreme court's affirmance of the trial court's judgment sentencing the defendant to ten years' imprisonment, the trial court is permitted, under HRPP Rule 35, to exercise its discretionary power to reduce the sentence if such action would be warranted); *State v. LeVasseur,* 1 Haw. App. 19, 30, 613 P.2d 1328, 1335 (1980), *cert. denied,* 449 U.S. 1018, 101 S.Ct. 582, 66 L.Ed.2d 479 (1980) (stating that, "under Rule 35, HRPP, it is open to the court below to reduce the sentence within ninety (90) days of the receipt of our mandate [affirming the judgment] if it sees fit").

**Revocation, modification of probation conditions.** (1) The court, on application of . . . the prosecuting attorney, . . . after a hearing, may revoke probation, reduce or enlarge the conditions of a sentence of probation[.]

. . . .

(3) The court shall revoke probation if the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of the order[.]

. . . .

(5) *When the court revokes probation, it may impose on the defendant any sentence that might have been imposed originally for the crime of which the defendant was convicted.*

(Emphasis added.)

■ " '[T]he interpretation of a statute[, such as HRS § 706–625] . . . is a question of law reviewable de novo.' " *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (quoting *State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)); *see also State v. Wang,* 91 Hawai'i 140, 141, 981 P.2d 230, 231 (1999), *reconsideration de-*

---

5. In her notice of appeal, Defendant states that she is appealing "from the Order of Resentencing [pursuant to a] Revocation of Deferred Acceptance of *No Contest* Plea filed . . . on October 21, 1999. (Emphasis added.) The titles of the opening and answering briefs state that this is an "APPEAL FROM THE ORDER OF RESENTENCING, REVOCATION OF DEFERRED ACCEPTANCE OF *NO CONTEST PLEA* FILED ON OCTOBER 21, 1999." (Emphasis added.)

However, as reflected elsewhere in the record, Defendant requested deferral of a guilty plea, not of a no contest plea. In Defendant's July 14, 1998 "Guilty Plea Form," she entered a plea of guilty. In an October 22, 1998 order, the court granted Defendant's motion for a DAGP. At the hearing to set aside the plea on October 21, 1999, the court "grant[ed] the motion to set aside the [DAGP] and accept[ed] the guilty plea of [Defendant] originally offered to the charge of commercial promotion of marijuana in the second degree." Although the court's October 21, 1999 order refers to a no contest plea, the text of the order states "that the Motion to Set Aside [DAGP] be granted[.]" The October 21, 1999 order of the court is inconsistent with the plea entered by Defendant and accepted by the court; the court is instructed to correct the pleadings *nunc pro tunc.*

*nied,* 91 Hawai'i 140, 981 P.2d 230 (1999); *State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930, *reconsideration denied,* 79 Hawai'i 341, 902 P.2d 976 (1995).

▮ In that regard,

"our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose."

*Gray v. Administrative Dir. of the Court,* 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997) (quoting *State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995) (citations omitted)).

The language of HRS § 706–625(5) is clear and unambiguous. As evident, and contrary to Defendant's assertion, HRS § 706–625 expressly applies to a sentence of probation and not to a DAGP. Under its terms, HRS § 706–625(5) affords a trial court discretion to impose a sentence it could have "originally" imposed in the case only where the previous sentence was one of probation. *See State v. Perry,* 93 Hawai'i 189, 190, 194–98, 998 P.2d 70, 71, 75–79 (App.), *cert. denied,* 93 Hawai'i 189, 998 P.2d 70 (2000) (recognizing that, "[u]pon revocation of [the d]efendant's probation, the court was bound, pursuant to [HRS] § 706–625, to resentence [the d]efendant only to a sentence that could have been imposed originally for the crime of which he was convicted").

**B.**

▮ In addition to examining the language in a statute, " 'the courts[, when interpreting statutes,] may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.' " *Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (quoting *Toyomura,* 80 Hawai'i at 18–19, 904 P.2d at 903–04).

We note that there is no legislative history supporting an extension of the "original sentence" provisions of HRS § 706–625 to a proceeding in which a DAGP is revoked. Rather, the purpose of HRS § 706–625 was to "consolidate[ ] the law with regard to the adding to or modifying [sic] the requirements of probation or suspension of sentence with revoking probation or suspension of sentence." [6] Sen. Stand. Com. Rep. No. 905, in 1985 Senate Journal, at 1294. Such a consolidation was sought because "the statutory provisions[, HRS §§ 706–625 (1972), 706–627 (1980), and 706–628 (1976),] dealing with revoking probation or suspension of sentence and those dealing with modifying or increasing the conditions [were] unnecessarily fragmented." *Id.; see also* Hse. Stand. Com. Rep. No. 388, in 1985 House Journal, at 1164. It appears, then, that HRS § 706–625 was primarily intended to unify the procedures for modification and revocation of probation. *See id.; see also* Sen. Com. Rep. No. 905, in 1985 Senate Journal, at 1294.

**C.**

**1.**

Were it argued that HRS § 706–625 should be applied to a DAGP because probation is similar to the granting of a DAGP, *see* discussion *infra,* we point out further, that an order granting a DAGP is not a sentence that, as described in HRS § 706–625, "might have been imposed originally for the crime of which the defendant was *convicted.*" (Emphasis added.) There is no "conviction" when the acceptance of a guilty plea is deferred. In enacting HRS chapter 853, the legislature found "that in certain criminal cases, particularly those involving first time, accidental, or situational offenders, it is in the best interest of the [prosecution] and the defendant that the defendant be given *the opportunity to keep his [or her] record free of a criminal conviction,* if he [or she] can comply with certain terms and conditions

---

**6.** HRS § 706–625 was enacted to deal with the "revocation of probation or suspension of sentence[.]" Hse. Stand. Com. Rep. No. 388, in 1985 House Journal, at 1164. HRS § 706–625(3) expressly refers to a suspended sentence,

stating that "[t]he court may revoke the suspension of a sentence or probation if the defendant has been convicted of another crime other than a felony."

during a period designated by court order." 1976 Haw. Sess. L. Act 154, § 2, at 279 (emphasis added). Therefore, "[t]he purpose of [HRS chapter 853 was] to establish a means whereby a court in its discretion may defer acceptance of a guilty plea for a certain period on certain conditions[.]" *Id.* The legislature further explained that "[t]he completion of such period in compliance with such conditions may then result in the discharge of the defendant and expungement of the matter from his [or her] record." *Id.* The effect of a DAGP was, thus, to enable a defendant to retain a "record free of a criminal conviction" by deferring a guilty plea for a designated period and imposing special conditions which the defendant was to successfully complete. *Id.* It follows also, then, that "discharge of the defendant and dismissal of the charge [following successful completion of the deferral period] ... is not a conviction." HRS § 853-1(d) (1993). Under these precepts, there is no "conviction" at the time a DAGP is granted. *See State v. Sugimoto,* 62 Haw. 259, 264, 614 P.2d 386, 390 (1980) (holding that the DAGP cannot be used for impeachment purposes because a DAGP "is not a conviction"); *see also State v. Akana,* 68 Haw. 164, 167, 706 P.2d 1300, 1303 (1985) (stating that "the more technical definition of "conviction" includes judgment or sentence rendered pursuant to ascertainment of guilt") (citations omitted).

### 2.

HRS § 853-3 also makes plain that a finding of DAGP violations must precede any adjudication of guilt and sentencing. Because there is no conviction at the time a DAGP is granted, there is nothing upon which a court can pronounce a sentence as it could have if it had originally accepted Defendant's guilty plea. Thus, at the time of Defendant's DAGP, there was no conviction upon which the court could impose a sentence.

### 3.

On the other hand, probation is a disposition that follows only after a conviction. The provisions relating to probation, HRS §§ 706-620 to -631, are part of chapter 706 of the Hawai'i Penal Code, which concerns the "disposition of *convicted* defendants." (Emphasis added.) *See* HRS § 706-620 ("A defendant who has been convicted of a crime may be sentenced to a term of probation[.]"). Only convicted defendants may be "sentenced," HRS chapter 706 mandating that "[no criminal] sentence shall be imposed [by a court] otherwise than in accordance with [HRS] chapter [706]." HRS § 706-600 (1993).[7] Although Defendant was under the age of twenty-two at the time her DAGP was granted, there was no conviction at that point upon which a sentence pursuant to HRS § 706-667 could have been imposed. As a result, the court did not "originally" have the option to sentence Defendant under HRS § 706-667 as maintained by Defendant. The legislature thus, logically, located the statutory provisions governing a DAGP in HRS chapter 853, separate and apart from those provisions applicable to sentencing set forth in HRS chapter 706.

For these further reasons, we conclude that HRS § 706-625(5) does not apply where a DAGP is revoked.

### D.

Finally, we point out that revocation of a DAGP is specifically and expressly governed by HRS § 853-3. That provision states that, "[u]pon violation of a term or condition set by the court for a [DAGP] ..., the court may enter an adjudication of guilt and proceed as otherwise provided." Under this section, it is evident that, upon revocation, the court is authorized to accept a defendant's guilty plea, adjudge the defendant guilty, and sentence the defendant under the charge to which he or she had pled. As opposed to HRS § 706-625, HRS § 853-3 lacks any legislative authorization for the court, following revocation, to consider a sentence for which a defendant would have been eligible at the time the DAGP was granted. We conclude that, because a court's course of action fol-

---

7. The express exception to this statement is found in HRS § 706-605.5(2) (1993), relating to "regimental discipline," which provides that the court "may order a defendant to satisfactorily complete a program of regimental discipline ... as a condition of probation or a [DAGP]."

lowing revocation is expressly set forth in HRS § 853–3, no need or justification arises for resort to any other statute, such as HRS § 706–625(5), for guidance in the situation presented by Defendant's case.

## III.

### A.

■ In our view, the foregoing result is also independently compelled by the public policy expressed in HRS § 706–667. The relevant portions of HRS 706–667 provide as follows:

(1) Defined. A young adult defendant is a person convicted of a crime who, *at the time of sentencing, is less than twenty-two years of age and who has not been previously convicted of a felony as an adult or adjudicated as a juvenile for an offense that would have constituted a felony* had the young adult defendant been an adult.

. . . .

(3) Special term. A young adult defendant convicted of a felony may, in lieu of any other sentence of imprisonment authorized by this chapter, be sentenced to a special indeterminate term of imprisonment if the court is of the opinion that such special term is adequate for the young adult defendant's correction and rehabilitation and will not jeopardize the protection of the public. When ordering a special indeterminate term of imprisonment, the court shall impose the maximum length of imprisonment which shall be eight years for a class A felony, five years for a class B felony, and four years for a class C felony.

(Emphasis added.) HRS § 706–667 is not ambiguous. Its scope is limited to persons less than twenty-two years of age who have had no prior felony law violations.

The legislative history of HRS § 706–667 comports with its express language. HRS § 706–667 is based on the Young Adult Offender statute, Section 6.05 of the Model Penal Code, and is in relevant part similarly worded. The Code's version of the young offender statute extends special sentencing to those under the age of twenty-two,[8] based upon the judgment "[t]hat the younger group of offenders beyond juvenile court age should be the subject of special attention in sentencing and specialized effort in correction." Model Penal Code, Tentative Draft No. 7, comments at 24 (1957) [hereinafter MPC Draft No. 7]; *see State v. Styker,* 134 N.J. 254, 633 A.2d 521, *cert. denied,* 133 N.J. 438, 627 A.2d 1144, *affirmed,* 134 N.J. 254, 633 A.2d 521 (1993) (citing Model Penal Code § 6.05 as providing "for indeterminate term sentencing for offenders between ages of sixteen and twenty-one 'if the [c]ourt is of the opinion that such special term is adequate for his [or her] correction and rehabilitation and will not jeopardize the protection of the public' "). It was thought that such a statute would "protect society more effectively by substituting for retributive punishment methods of training and treatment directed toward the correction and rehabilitation of young persons found guilty of violation[s] of law." MPC Draft No. 7 commentary 24 n. 1 (citing Model Youth Correction Authority Act, § 1 (1940)).

While the Model Penal Code acknowledged that "the incidence of criminality and of re-

---

**8.** Model Penal Code, Tentative Draft No. 7 § 6.05 (1957), relating to young adult offenders, states in relevant part as follows:

(1) *Specialized correctional treatment.* A young adult offender is a person convicted of a crime who, at the time of sentencing, is sixteen *but less than twenty-two years of age.* A young adult offender who is sentenced to a term of imprisonment which may exceed thirty days [alternatives: (1) ninety days; (2) one year] shall be committed to the custody of the Division of Young Adult Correction of the Department of Correction, and shall receive, as far as practicable, such special and individualized correctional and rehabilitative treatment as may be appropriate to his [or her] needs.

(2) *Special term.* A young adult offender convicted of a felony may, in lieu of any other sentence of imprisonment authorized by this Article, be sentenced to a special term of imprisonment without a minimum and with a maximum of four years, regardless of the degree of the felony involved, if the Court is of the opinion that such special term is adequate for his [or her] correction and rehabilitation and will not jeopardize the protection of the public.

(Some emphasis added; some brackets in original and some brackets added.)

cidivism in this age span is distressingly and disproportionately high[,]" the Code's view was that "these are still, however, formative years in personal development, and that these individuals[, young adults under the age of twenty-two,] have many years of active life ahead." *Id.* at 24. The Code proposed special sentences that related "to the duration of commitment[.]" *Id.* at 25 (emphasis added); *see also State v. Tilley,* 400 So.2d 1363, 1366–68 (La.1981) (vacating, as excessive and harsh, a sentence imposing twenty-one years of hard labor and a $10,000 fine upon an eighteen-year-old first time offender; relying in part on the Model Penal Code § 6.05, which "suggests that a young adult offender ... convicted of a felony be sentenced to a 'special term of imprisonment without a minimum and with a maximum of four years, regardless of the degree of the felony involved' ").

### B.

The same approach was adopted by the legislature in establishing, through HRS § 706–667, a "more equitable and just structure" of punishing young adult defendants. Conf. Com. Rep. No. 34–80, in 1980 House Journal, at 1088. The statute provides "different maximum terms of imprisonment for young adult defendants [as compared to those for older adult offenders] for the different degrees of felonies included in the penal code." *Id.* The commentary to HRS § 706–667 discloses that specialized treatment for young persons was premised on the belief that "*the age span encompassed in this section is a period of formative years [and] ... prudence and humanity ... argue for specialized and concentrated effort in this area.*" Commentary on HRS § 706–667 (citing MPC Draft No. 7, comments at 24).

In light of this legislative history, we view the textual emphasis in HRS § 706–667 on a particular "age span" as purposeful and designed to limit the statute's dispensation to those in the prescribed "formative years." Hence, a defendant whose years exceed the statutory age span would not be an intended potential beneficiary of the statute. By its language and history, HRS § 706–667 was meant to be age-specific.

### C.

■ We regard the provisions of HRS § 706–667 as controlling in any perceived conflict between it and HRS § 706–625. "[W]here there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored." [9] *State v. Kotis,* 91 Hawai'i 319, 330, 984 P.2d 78, 89, *reconsideration denied* (1999); *Wong v. Takeuchi,* 88 Hawai'i 46, 53, 961 P.2d 611, 618 (1998); *State v. Vallesteros,* 84 Hawai'i 295, 303, 933 P.2d 632, 640, *reconsideration denied,* 84 Hawai'i 496, 936 P.2d 191 (1997); *Richardson v. City and County of Honolulu,* 76 Hawai'i 46, 55, 868 P.2d 1193, 1202, *reconsideration denied,* 76 Hawai'i 247, 871 P.2d 795 (1994), *judgment aff'd,* 124 F.3d 1150 (9th Cir.1997). By reference to "any sentence that might have been imposed originally," HRS § 706–625 impliedly incorporates the panoply of sentencing alternatives available under HRS chapter 706. In this sense it is, as compared to HRS § 706–667, general in nature with respect to sentencing alternatives. As posed by Defendant, the point in time at which she maintains HRS § 706–667 should be deemed applicable would place HRS §§ 706–625 and –667 in irreconcilable conflict. However, as stated above, to the extent that there arguably is a "plainly irreconcilable" conflict

---

9. In interpreting statutes that appear to relate to the same subject matter, this court has adopted three rules of statutory construction:

First, legislative enactments are presumptively valid and should be interpreted in such a manner as to give them effect. *Second, laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another. Third, where there is a plainly irreconcilable conflict between a general and a specific statute con-*

*cerning the same subject matter, the specific will be favored.* However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored.

*Richardson v. City and County of Honolulu,* 76 Hawai'i 46, 54–55, 868 P.2d 1193, 1201–02, *reconsideration denied,* 76 Hawai'i 247, 871 P.2d 795 (1994), *judgment aff'd,* 124 F.3d 1150 (9th Cir.1997) (internal quotation marks, brackets, and citations omitted) (emphasis added).

between a general statute (*i.e.,* HRS § 706–625) and a specific statute (*i.e.,* HRS § 706–667) concerning the same subject matter (*i.e.,* sentencing), the specific statute will be favored. *Id.* As HRS § 706–667 involves specialized treatment for a limited group of defendants, it is more specific in nature than HRS § 706–625, which generally refers to "any sentence." Hence, HRS § 706–667 is to be favored and would control in this case.

## IV.

■ At the time Defendant tendered her guilty plea on July 14, 1998, she was of HRS § 706–667 status. Therefore, on that date, had her guilty plea been accepted, she could have been sentenced in the court's discretion[10] under HRS § 706–667 as a young adult defendant. *Cf. State v. Daugherty,* 71 Haw. 609, 610, 801 P.2d 553, 554 (1990) (holding that "the trial court was correct in concluding that [the a]ppellant did not fall within the definition of young adult defendant because of his adjudication as a juvenile").

However, Defendant opted for a DAGP and a deferral period of five years with all the conditions attendant to that procedure. When Defendant's DAGP was revoked, she was subject to all sentencing dispositions available at the time her plea was accepted. HRS § 853–3. But by then she was twenty-two years of age, no longer an intended beneficiary of HRS § 706–667, and, thus, ineligible for young adult defendant consideration. Therefore, we conclude that the court correctly decided that, at the time Defendant's DAGP was accepted, the option of sentencing Defendant under the young adult defendant statute was no longer available.

## V.

Although neither party argues that revocation under the DAGP procedure should be treated as analogous to revocation of probation, we are aware that in *State v. Kaufman,* 92 Hawai'i 322, 991 P.2d 832 (2000), this court held that HRS § 706–627, which tolled the running of a probation period, should apply to the running of a deferral period under a DAGP despite the absence of language to that effect in the DAGP statute. *See* HRS § 853–1. We believe that *Kaufman,* however, is distinguishable from this case.

In *Kaufman,* the defendant, who pled guilty to twenty-six counts of first degree theft, moved for a DAGP. *Kaufman,* 92 Hawai'i at 323, 991 P.2d at 833. In 1984, the circuit court entered an order granting the motion, imposed special conditions, and deferred acceptance of the defendant's guilty plea for five years until 1989. *Id.*

In 1989, the deferral period was extended another five years to 1994, modifying the DAGP. *Id.* In 1994, the prosecution filed a motion to set aside the modified DAG plea based on violations of DAGP conditions. *Id.* at 324, 991 P.2d at 834. The defendant stipulated to the violations and the circuit court granted the prosecution's motion and accepted the defendant's guilty plea. *Id.*

On appeal, the defendant argued *inter alia* that "the circuit court lacked jurisdiction to set aside the modified DAG[P] because no tolling provision was applicable to toll his period of deferral, which expired before the [prosecution] filed its motion to set aside the modified DAG[P]." *Id.* at 327, 991 P.2d at 837. This court held that because a "DAG plea deferral period is closely analogous to probation," the probation tolling provisions in HRS § 706–627 applied to the deferral period of a DAG[P]. *Id.* at 327–28, 991 P.2d at 837–38.

---

10. Even if a defendant qualifies for young adult defendant treatment, HRS § 706–667(3) indicates that discretion lies in the court to determine if such a sentence is appropriate, considering the need to correct deviant behavior and provide rehabilitation, while not jeopardizing public protection:

Subsection 3 merely authorizes the employment of a special, more limited term of imprisonment if the court is of the opinion that such special term is adequate for ... the defendant's correction and rehabilitation and will not jeopardize the protection of the public. Assuming the court is satisfied that this condition can be met, there seems no reason for not allowing the court, if it chooses, to protect the young offender from the longer maxima provided for felonies.

Commentary on HRS § 706–667.

It was reasoned that the probation tolling provision was enacted in part to prevent a probationer from escaping probation revocation simply because his or her probation period ended before a pending probation revocation hearing was held. *Id.* at 328, 991 P.2d at 838. This court concluded that the same public policy applicable to tolling a probation period would be achieved by applying HRS § 706–627 to a DAGP deferral period; otherwise "a person subject to a deferral period pursuant to a DAG[P] would effectively escape the sanction of revocation simply because his [or her] untolled deferral period had expired before the trial court ruled on the revocation." *Id.*

## VI.

The instant case is distinguishable from *Kaufman* for several reasons. First, the *Kaufman* application of the probation tolling provision under HRS § 706–627 to DAGPs was necessitated by the absence of a governing provision in HRS chapter 853. Here, there is no absence of language in HRS chapter 853 governing the procedure to be undertaken by the circuit court in the event of a DAGP revocation. *See* HRS § 853–3. For this reason, the need to resort to probation provisions in HRS chapter 706 by analogy does not arise. Second, the revocation sentencing provision in HRS § 706–625 is conceptually inimical to the situation involving an HRS § 853–3 revocation of a DAGP. The former can only follow a conviction; the latter does not. Unlike *Kaufman*, the probation provision that is espoused by Defendant cannot be reconciled with the DAGP procedure. Finally, in contrast to *Kaufman*, here an additional, specific public policy ground, as manifested in HRS § 706–667, is preferred over the general probation provision.

## VII.

### A.

▇▇▇ Defendant's second argument on appeal is that the court abused its discretion in sentencing Defendant to ten years in prison. It is well established that "a sentencing judge generally has broad discretion in imposing a sentence." *Keawe v. State,* 79 Hawai'i 281, 284, 901 P.2d 481, 484 (1995); *State v. Gaylord,* 78 Hawai'i 127, 143–44, 890 P.2d 1167, 1183–84 (1995); *State v. Akana,* 10 Haw.App. 381, 384, 876 P.2d 1331, 1333 (1994) (citing *State v. Valera,* 74 Haw. 424, 435, 848 P.2d 376, 381, *reconsideration denied,* 74 Haw. 650, 853 P.2d 542 (1993)).

▇▇▇ "The applicable standard of review in sentencing matters is whether the court committed a plain and manifest abuse of discretion in its decision." *State v. Guillermo,* 91 Hawai'i 307, 313, 983 P.2d 819, 825 (1999); *Keawe,* 79 Hawai'i at 284, 901 P.2d at 484; *State v. Fry,* 61 Haw. 226, 231, 602 P.2d 13, 17 (1979). "Generally, to constitute an abuse [of discretion,] it must appear that the [trial] court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Klinge,* 92 Hawai'i 577, 584, 994 P.2d 509, 516 (2000) (citations omitted); *see also State v. Sacoco,* 45 Haw. 288, 292, 367 P.2d 11, 13 (1961). "[F]actors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions." *Akana,* 10 Haw.App. at 385, 876 P.2d at 1333; *see also State v. Martin,* 56 Haw. 292, 294, 535 P.2d 127, 128 (1975).

### B.

In the present case, the court's sentence was neither "arbitrary or capricious" nor a plain and manifest abuse of its sentencing discretion. First, Defendant voluntarily entered her guilty plea in writing to the charge and did not contest it. *See Akana,* 10 Haw. App. at 385, 876 P.2d at 1334. In her guilty plea, Defendant acknowledged that her attorney had informed her of the possible maximum indeterminate sentence of ten years for the offense charged.

Further, the court, on the record, considered the parties' arguments for other sentencing alternatives before imposing sentence. *See id.* at 384, 876 P.2d at 1333; *Fry,* 61 Haw. at 231, 602 P.2d at 17. It discussed the prosecution's recommendation of probation, but decided that Defendant was not probationable. *See supra* page 365, 3 P.3d

page 1242. The court also reflected on Defendant's request for an HRS § 706–667 sentence but as we have held, properly determined Defendant was not eligible therefor. Finally, a sentence of ten years' imprisonment was in accordance with the applicable statutes. Commercial promotion of marijuana in the second degree is a class B felony. HRS § 712–1249.5(2). A person convicted of a class B felony may be sentenced to an "indeterminate term of imprisonment . . . [of ten] years." HRS § 706–660(1). Defendant pled guilty to a class B felony and, hence, in the discretion of the court, could be sentenced to the maximum indeterminate term for that felony. Under these circumstances, we cannot say the court abused its discretion in thus sentencing Defendant.[11]

## VIII.

For the foregoing reasons, we affirm the court's October 21, 1999 Order of Re-sentencing.

---

**11.** We are aware that the parties, with the approval of the court, stipulated to defer Defendant's motion for reconsideration of sentence until after this appeal had been decided. *See supra* note 4. At any reconsideration hearing, Defendant's lack of prior felony convictions as a juvenile and as an adult is obviously a factor to be evaluated by the court. *See Martin,* 56 Haw. at 294, 535 P.2d at 128. Similarly, in the event reconsideration is denied, the parole board must also consider Defendant's prior felony-free record. *See* HRS § 706–670(1) (Supp.1999); HRS § 353–62(2)–(3) (1993).